**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 18-2236**

---

NELSA ROSA HERNANDEZ-CABRERA; A.J.E.H.,

Petitioners,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

------------------------------

IMMIGRATION LAW PROFESSORS; TAHIRIH JUSTICE CENTER; ASIAN PACIFIC INSTITUTE ON GENDER-BASED VIOLENCE; ASISTA; AYUDA, INCORPORATED; NATIONAL IMMIGRANT WOMEN'S ADVOCACY PROJECT; TWENTY-SEVEN FORMER IMMIGRATION JUDGES AND MEMBERS OF THE BOARD OF IMMIGRATION APPEALS; GEOFFREY THALE,

Amici Supporting Petitioner.

---

**No. 19-1971**

---

NELSA ROSA HERNANDEZ-CABRERA; A.J.E.H.,

Petitioners,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

------------------------------

IMMIGRATION LAW PROFESSORS; TAHIRIH JUSTICE CENTER; ASIAN PACIFIC INSTITUTE ON GENDER-BASED VIOLENCE; ASISTA; AYUDA, INCORPORATED; NATIONAL IMMIGRANT WOMEN'S ADVOCACY PROJECT; TWENTY-SEVEN FORMER IMMIGRATION JUDGES AND MEMBERS OF THE BOARD OF IMMIGRATION APPEALS; GEOFFREY THALE,

Amici Supporting Petitioner.

On Petitions for Review of Two Orders of the Board of Immigration Appeals.

Argued: September 9, 2020                    Decided: November 23, 2020

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Petitions for review denied by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Alexandra Rachel Saslaw, MAYER BROWN LLP, Washington, D.C., for Petitioners. Christina Petersen Greer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent. **ON BRIEF:** Adina B. Appelbaum, Claudia R. Cubas, CAIR COALITION, Washington, D.C.; Evan M. Tager, Catherine A. Bernard, MAYER BROWN LLP, Washington, D.C., for Petitioners. Joseph H. Hunt, Assistant Attorney General, Terri J. Scadron, Assistant Director, Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Linda T. Coberly, Maura T. Levine-Patton, Chicago, Illinois, Heather P. Lamberg, WINSTON & STRAWN LLP, Washington, D.C., for Amicus National Immigrant Women's Advocacy Project. Richard W. Mark, Amer S. Ahmed, Indraneel Sur, Timothy Sun, GIBSON, DUNN & CRUTCHER LLP, New York, New York, for Amici Twenty-Seven Former Immigration Judges and Members of the Board of Immigration Appeals. Anjum Gupta, Immigrant Rights Clinic, RUTGERS LAW SCHOOL, Newark, New Jersey, for Amici Immigration Law Professors. Julie Carpenter, THE TAHIRIH JUSTICE CENTER, Falls Church, Virginia; David E. Carney, Washington, D.C.; Holly Henderson-Fisher, Benjamin Rankin, New York, New York; Kenneth M. Thomas, Chicago, Illinois; Andrew D. Kinsey, Jason S. Levin, Wilmington, Delaware, for Amicus The Tahirih Justice Center. Geoffrey Thale, Vice President for

2

Programs, WASHINGTON OFFICE ON LATIN AMERICA, Washington, D.C., Amicus Curiae Pro Se.

———————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

In this consolidated appeal, petitioner Nelsa Rosa Hernandez-Cabrera, a native and citizen of Honduras, seeks asylum for protection from harm at the hands of her former domestic partner, José Wilmer Garcia. Petitioner A.J.E.H. is Hernandez-Cabrera's minor son and seeks asylum as a derivative applicant.

After an evidentiary hearing, an Immigration Judge ("IJ") denied Hernandez-Cabrera's application for asylum. The IJ found that Hernandez-Cabrera gave credible testimony but failed to establish eligibility for asylum because she didn't sufficiently corroborate her claim. In the alternative, the IJ found Hernandez-Cabrera ineligible for asylum because she didn't establish that her life or freedom would be threatened on account of a protected ground if she returned to Honduras. The Board of Immigration Appeals affirmed the IJ's decision and dismissed Hernandez-Cabrera's appeal. The Board subsequently denied Hernandez-Cabrera's motion to reconsider.

We conclude that there is substantial evidence in the record for at least some of the Board's factual findings made in affirming the IJ's decision. These findings render Hernandez-Cabrera ineligible for asylum as a matter of law. Accordingly, we deny the petitions for review.

I.

Hernandez-Cabrera and her son crossed the U.S.-Mexico border without valid entry documents and were apprehended on May 25, 2015. Following a credible fear interview, they were issued Notices to Appear and placed in removal proceedings. They conceded

4

their removability and sought relief by applying for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (the "CAT").[1]

Hernandez-Cabrera testified and offered evidence, including a sworn affidavit, at a hearing before an IJ. We first summarize Hernandez-Cabrera's testimony and then describe the IJ's and the Board's decisions.

A.

Hernandez-Cabrera met Garcia in December 2010 and began dating him shortly thereafter. She moved into Garcia's home in May 2011.[2] Garcia began to abuse Hernandez-Cabrera approximately two months later. Garcia physically abused Hernandez-Cabrera, called her disparaging names, threatened her, and humiliated her in front of others. He exercised control over every aspect of her life. He took the money she made at work and spent it on himself. Eventually, he caused her to lose her job. She didn't seek another job because he wanted her to stay home and take care of him. When Hernandez-Cabrera wasn't interested in sex, Garcia would force her to do what he wanted. Hernandez-Cabrera did not receive medical treatment for Garcia's abuse, and she never reported the abuse to the police because Garcia threatened that "things would be worse" if she did. A.R. 789.

Hernandez-Cabrera decided to leave Garcia in January 2012 and move home with her mother. When she told Garcia she was leaving, he said she had to have sex with him

---

[1] Petitioners have abandoned Hernandez-Cabrera's claims for withholding of removal and protection under the CAT.

[2] A.J.E.H. remained with Hernandez-Cabrera's mother.

5

one last time and raped her. Immediately afterwards, Hernandez-Cabrera left Garcia's home and went to her mother's house, which was about an hour away by bus. About a week later, Garcia showed up at the house and threatened her. He told Hernandez-Cabrera that she was still his woman, and he would kill her if she didn't go back to him. Her mother supported her and told her to tell Garcia to leave.

Some months later, Hernandez-Cabrera found out she was pregnant with Garcia's child. Hernandez-Cabrera told Garcia about the pregnancy. Garcia continued to try to convince Hernandez-Cabrera to get back together with him, sometimes threatening her. One time he came to her mother's home drunk and threatened Hernandez-Cabrera with a machete. Hernandez-Cabrera's affidavit indicates that Garcia tried to have sex with her throughout her pregnancy and would sometimes hold her forcibly during these attempts. However, Hernandez-Cabrera testified that Garcia did not physically harm her after she ended their relationship in 2012.

After their daughter was born, Garcia continued to pressure Hernandez-Cabrera to move back in with him, even threatening to take their daughter away from her if she didn't (he did not act on these threats). He regularly visited Hernandez-Cabrera's mother's home on the weekends to see their daughter. Occasionally, Hernandez-Cabrera's parents would tell Garcia he was disrespectful and would ask him to leave, but no one called the police when he refused. Her parents told Hernandez-Cabrera that she had to "make a decision" about whether she would continue the relationship. A.R. 790.

Hernandez-Cabrera lived with her mother for about three years before departing for the United States in 2015. She brought A.J.E.H. with her but left her daughter with her

6

mother because she was too young for the journey. After arriving in the United States, Hernandez-Cabrera rekindled her relationship with A.J.E.H.'s father, who is undocumented. Hernandez-Cabrera and A.J.E.H.'s father have since had another son together.

Hernandez-Cabrera's mother told her that Garcia attempted to follow her to the United States in 2016 but was deported to Honduras from Mexico. The letter that Hernandez-Cabrera's mother wrote on her behalf (which Hernandez-Cabrera submitted as evidence) didn't mention this incident, however, and when asked, Hernandez-Cabrera couldn't explain the omission.

Hernandez-Cabrera fears that if she goes back to Honduras, Garcia will torture and kill her. In seeking asylum, she claims that Garcia persecuted her on account of her membership in at least one of two particular social groups: "Honduran women who are unable to leave their domestic relationship" and "Honduran women viewed as property by their domestic partners."

### B.

The IJ denied Hernandez-Cabrera's application for asylum. The IJ first considered Hernandez-Cabrera's evidence and held that she failed to sufficiently corroborate her claim. The IJ then alternatively held that even if she had sufficiently corroborated her claim, Hernandez-Cabrera didn't establish eligibility for asylum because (1) she is not a member of her proposed groups because she successfully left her relationship with Garcia, (2) her proposed groups are not legally cognizable, (3) her membership in a particular social group wasn't a central reason for Garcia's abuse because Garcia's motive was

personal in nature, and (4) her fear of returning to Honduras is not objectively reasonable, in part because she failed to establish that the Honduran government would be unable or unwilling to protect her.

The Board dismissed Hernandez-Cabrera's appeal. In doing so, the Board specifically affirmed the IJ's findings that (1) Hernandez-Cabrera is not a member of her proposed groups, (2) Garcia's motive for abusing Hernandez-Cabrera was personal and not based on her membership in any particular social group, and (3) Hernandez-Cabrera didn't establish that the Honduran government would be unable or unwilling to protect her from future harm by Garcia.

The Board subsequently denied Hernandez-Cabrera's motion to reconsider, finding no material errors of fact or law in its prior decision. The Board again affirmed the IJ's findings that Hernandez-Cabrera successfully left her relationship with Garcia and that she failed to establish that the Honduran government is unable or unwilling to protect her. Finally, the Board reasoned that Hernandez-Cabrera's proposed groups are impermissibly circular under *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), *abrogated on other grounds by Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020), because the characteristics "unable to leave their domestic relationship" and "viewed as property" don't exist independently of the risk of persecution.

Hernandez-Cabrera and A.J.E.H. timely petitioned this court for review of the Board's decisions.

8

The issue before us is whether the Board erred by denying Hernandez-Cabrera's asylum claim. "We may vacate a denial of asylum only if it is 'manifestly contrary to law.'" *Crespin-Valladares v. Holder*, 632 F.3d 117, 124 (4th Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(C)). We review factual findings for substantial evidence, meaning they are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ai Hua Chen v. Holder*, 742 F.3d 171, 178 (4th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal determinations de novo. *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018). When the Board affirms the IJ's decision with an opinion of its own, we review both decisions. *Id.*

The Attorney General is authorized to grant asylum to any "refugee," defined as someone who is unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Harm inflicted by non-governmental actors doesn't constitute "persecution" under the statute unless the petitioner also demonstrates that the government is "unable or unwilling to control" those inflicting the harm. *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (B.I.A. 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 439 (B.I.A. 1987); *accord Crespin-Valladares*, 632 F.3d at 128.

When a petitioner claims persecution on account of her "membership in a particular social group," she must define a relevant cognizable group. A cognizable group satisfies the following criteria: "(1) its members share common, immutable characteristics, (2) the

9

common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership." *Canales-Rivera v. Barr*, 948 F.3d 649, 654 (4th Cir. 2020). The petitioner must also demonstrate a nexus between her defined group and the persecution, meaning her membership in the group "was or will be at least one central reason" motivating her persecutor. 8 U.S.C. § 1158(b)(1)(B)(i).

The petitioner bears the burden of proving her eligibility for asylum. *Naizgi v. Gonzales*, 455 F.3d 484, 486 (4th Cir. 2006); 8 C.F.R. § 1208.13(a). This determination is neither a balancing test nor a factor analysis; a petitioner must satisfy all the statutory requirements. Thus, if a petitioner's "application is fatally flawed in one respect . . . an [IJ] or the Board need not examine the remaining elements of the asylum claim." *Matter of A-B-*, 27 I. & N. Dec. at 340 (citing *Perez-Rabanales v. Sessions*, 881 F.3d 61, 67 (1st Cir. 2018) ("That ends this aspect of the matter. The petitioner's failure to satisfy both the particularity and the social distinctiveness requirements defeats her attempt to qualify as a refugee through membership in a particular social group.")).

A.

We hold that substantial evidence supports the Board's finding that Hernandez-Cabrera isn't a member of either of her defined groups: "Honduran women who are unable to leave their domestic relationship" or "Honduran women viewed as property by their domestic partners." Both groups are defined in the present tense, meaning that once someone is no longer in a domestic relationship that she is unable to leave—and is no longer viewed as property by her domestic partner—she's no longer a member of either group. Here, there's no dispute that Hernandez-Cabrera ended her relationship with

10

Garcia, and she doesn't allege that she is unable to leave her relationship with her current domestic partner or that he views her as property.

Petitioners and amici argue that the Board erred by finding that Hernandez-Cabrera successfully ended her relationship with Garcia when she moved out of his home in 2012. They point to Garcia's continued visits, harassment, and threats after Hernandez-Cabrera moved in with her mother and cite evidence demonstrating that these tactics are common among perpetrators of domestic violence who continue to exert control over their victims even after they move out of a shared home. Indeed, though Hernandez-Cabrera testified that Garcia didn't physically harm her after she left his home, she also testified that he continued to harass and threaten her both before and after she gave birth to their daughter.

However, the record reflects that (1) Hernandez-Cabrera never resumed her relationship with Garcia during the three years she lived in Honduras after leaving him, (2) she's had no contact with Garcia since at least 2015, and (3) she resumed a prior relationship after arriving in the U.S. As a result, substantial evidence supports the Board's finding that Hernandez-Cabrera successfully left her relationship with Garcia and is no longer a member of her proposed groups. This finding renders Hernandez-Cabrera ineligible for asylum as a matter of law.[3]

---

[3] The fact that Hernandez-Cabrera is no longer a member of her proposed groups also supports the IJ's finding that the groups don't satisfy the immutability requirement for a cognizable particular social group. If membership in a group is defined in part by a present relationship that is subject to change, it logically follows that the group's characteristics are not immutable.

B.

We also hold that substantial evidence supports the Board's finding that Hernandez-Cabrera failed to establish a nexus between Garcia's abuse and her membership in a particular social group. A persecutor's actual motive is a matter of fact that the IJ determines and the Board reviews for clear error. *Matter of N-M-*, 25 I. & N. Dec. 526, 532 (B.I.A. 2011). Here, the IJ found that (1) Hernandez-Cabrera failed to establish that Garcia viewed her as a member of a group and sought to persecute her because of that membership, and (2) Garcia's actual motive for abusing Hernandez-Cabrera was personal in nature. In dismissing Hernandez-Cabrera's appeal, the Board specifically affirmed these findings.

Petitioners take issue with the Board's "perfunctory treatment" of this element and argue that both the IJ and the Board ignored "substantial, convincing evidence" that Hernandez-Cabrera's particular social group membership was a central reason for Garcia's abuse. Petitioners' Op. Br. at 47, 48. But the evidence petitioners cite only bolsters the IJ's finding that Garcia's motive was personal—he abused Hernandez-Cabrera because of her relationship with *him* and his vile belief that she was *his* property. *See id.* at 49 (arguing that "[Garcia] abused Hernandez-Cabrera on account of her status as a woman unable to leave *their* relationship and a woman whom he viewed as *his* personal property. Garcia's jealousy stemmed from his belief that Hernandez-Cabrera is '*his* woman' and that she should not be able to leave *him* or to live autonomously.") (emphasis added).

The record is devoid of evidence that Garcia was aware of either of the groups Hernandez-Cabrera defines or that he persecuted her on account of her membership in any

12

group.  Because Hernandez-Cabrera bore the burden of establishing a nexus, substantial evidence supports the Board's finding that she did not.  This finding independently renders Hernandez-Cabrera ineligible for asylum.

C.

Finally, we hold that substantial evidence supports the Board's finding that Hernandez-Cabrera failed to establish that the Honduran government is unable or unwilling to protect her.  Petitioners portray the Board's reasoning as erroneously linear: because Hernandez-Cabrera didn't contact the police, she can't establish that the Honduran government is unable or unwilling to protect her.  This oversimplifies the Board's finding.

The IJ considered Hernandez-Cabrera's country-conditions evidence—the sole relevant evidence she offered on this point—and determined that, at most, the evidence left the IJ to speculate as to whether efforts to seek help from law enforcement in the future would be ignored or otherwise ineffective.  The IJ reasoned that such speculation doesn't establish a well-founded fear of future persecution that is objectively reasonable, and thus Hernandez-Cabrera didn't satisfy her burden of doing so.  Not only did the Board affirm the IJ's decision in dismissing Hernandez-Cabrera's appeal, it also specifically affirmed this finding in denying her motion to reconsider.  On this record, we cannot hold that "any reasonable adjudicator would be compelled to conclude to the contrary."  *See* 8 U.S.C. § 1252(b)(4)(B).

\*　　\*　　\*

Accordingly, we affirm the Board's denial of Hernandez-Cabrera's asylum claim.  Because petitioners have failed to establish the basic requirements for asylum under well-

settled law, we need not reach the issue of whether Hernandez-Cabrera's defined particular social groups are impermissibly circular under *Matter of A-B-*.

*PETITIONS DENIED*